UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE LYDIA SCHWEER FAMILY TRUST,
by and through the trustee, ARLENE FUQUA,

    Plaintiff,

v.        CASE NO: 8:09-cv-2451-T-26MAP

ALFRED DINGLER,
PRIME INSURANCE AGENCY, and
THE HARTFORD INSURANCE COMPANY,

    Defendants.
_____/

## O R D E R

Before the Court is Defendants Alfred Dingler and Prime Insurance Agency's Motion to Dismiss (Dkt. 5), and Plaintiff's Response and affidavit of Arlene Fuqua, the trustee of the Lydia Schweer Family Trust (the Trust). (Dkt. 10). After careful consideration of the motion and the file, the Court concludes that the motion should be denied.

**PERTINENT ALLEGATIONS**

Defendant Alfred Dingler is the owner and agent of Defendant Prime Insurance Agency (Prime). Dingler, through Prime, sold Lydia Schweer a life insurance policy issued by Defendant The Hartford Insurance Company (Hartford) in 1997. The Hartford policy required an initial payment of $100,000.00 on a $455,000.00 "paid-up" policy.

From 1997 through the date this action was filed in this Court, Dingler and Prime serviced the policy. At some point in 2004, Arlene Fuqua moved to Florida.

Ms. Fuqua avers that she communicated to and received communications from Dingler and Prime through written correspondence as well as telephone calls on multiple occasions after moving to Florida in 2004. She avers that she was contacted by Dingler through written correspondence that the premium had increased another $100,000.00 and that payment was due or the policy would lapse. She avers that in March 2006, Dingler accepted partial payment from the Trust, which was administered by her in Florida, in the amount of $7,993.08. The March 2006 payment represented a partial payment of the increase of $100,000.00 in the policy premium, which was triggered by Lydia Schweer's living past the actuarial life expectancy at the time she purchased the policy.

Attached to the affidavit is a letter dated August 7, 2006, from Hartford directed to Ms. Fuqua at her Florida address and copied to Dingler. The letter refers to a request for reinstatement previously made by Ms. Fuqua and it also refers to a prior letter sent to her from Hartford dated July 25, 2006. Also attached to the affidavit are other letters including a letter dated April 10, 2006, from Hartford to Dingler regarding the grace period lapsing after 61 days. Prime and Hartford terminated the policy for failure to pay the remaining premium due.

Plaintiff filed a four-count complaint in state court on August 20, 2009. The case was removed to this Court on December 2, 2009, seeking the following relief against Dingler and Prime: (1) breach of fiduciary duty in count I; (2) misrepresentation in count

II; and (3) churning pursuant to section 626.9541 of the Florida Statutes in count III.[1] (Dkt. 2). The complaint alleges that Dingler committed the three causes of action based on the fact that he "knew, or should have known, that the product (policy) was significantly oversold to Lydia Schweer" and that he "failed to properly and appropriately advise her of the long-term consequences of purchasing the policy, such as the dramatic increase of premium and the risk of loss of the initial payment of $100,000.00 in the event the dramatically increased premium could not be afforded." (Dkt. 2 at para. 14).

With respect to Florida's long-arm statute and constitutional considerations, the complaint alleges that although the Trust came into existence in the state of Georgia, Ms. Fuqua moved to Florida in October 2004. (Dkt. 2 at para. 5). The complaint alleges that Ms. Fuqua "has been performing her duties as trustee under the Trust continuously in Pasco County, State of Florida, since October 29, 2004." (Dkt. 2 at para. 6). Moreover, "[m]any of the actions of Dingler, Prime and Hartford that form the basis of this Complaint occurred or had its impact in Pasco County, State of Florida." (Dkt. 2 at para. 7). The complaint alleges that "Dingler, Prime and Hartford all could reasonably anticipate being haled into court in Pasco County, State of Florida, resulting from their respective actions described herein." (Dkt. 2 at para. 8). Finally, the complaint alleges that Ms. Fuqua "was advised by Dingler that the premium increased by $100,000, and the

---

[1] Count IV seeks relief against Hartford for failure to supervise.

policy was in danger of lapsing for non-payment." (Dkt. 2 at para. 12). Thereafter on March 14, 2006, the Trust tendered payment to Prime and Hartford. (Dkt. 2 at para. 13).

## **PERSONAL JURISDICTION OVER DINGLER AND PRIME**

Jurisdiction in this case is based on diversity jurisdiction. (Dkt. 1). To determine whether this Court has personal jurisdiction over the "agency" defendants, a two-pronged test must be employed. Scupltchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). First, this Court must analyze whether Florida's long-arm statute, section 48.193, provides a basis for jurisdiction. Second, once the long-arm statute has been satisfied, then a due process test must be applied to determine whether constitutional minimum contacts exist between the defendants and the forum state, Florida, sufficient to fulfil "the traditional notions of fair play and substantial justice." Sculptchair, 94 F.3d at 626 (citing Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) and quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Federal courts must construe the long-arm statute "as would the Florida Supreme Court." Robinson, 75 F.3d at 256 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)). Florida's long-arm statute "bestows broad jurisdiction on Florida courts." Execu-tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd., 752 So.2d 582, 584 (Fla. 2000).

Once the plaintiff makes a prima facie case for personal jurisdiction through the allegations of the complaint, the defendants may contest jurisdiction through the use of affidavits, documents, or other evidence. If the defendants submit affidavits, then the

burden shifts to the plaintiff to prove jurisdiction. Sculptchair, 94 F.2d at 627 (quoting Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990), cert. denied, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 447 (1991)). Any discrepancies are resolved by drawing all reasonable inferences in favor of the plaintiff. See Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990).

Addressing first the specific[2] personal jurisdiction under 48.193(1)(b), Florida Statutes,[3] this Court concludes that the allegations of the complaint and the counter-affidavit of Plaintiff sufficiently satisfy its requirements for "committing a tortious act." The complaint states a cause of action for the tort of breach of fiduciary duty, which answers the threshold question of whether a tort has been committed. See Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla. 2002) (noting that cause of action must be alleged before court can determine whether communications arise therefrom). The fiduciary duty owed by Dingler and Prime to the Trust involves the alleged duty to service the life insurance policy. The affidavit establishes that communication were made from Dingler and Prime to the Trust after Ms. Fuqua moved to Florida in 2004. In 2006, Dingler directed correspondence to Ms. Fuqua communicating the increase in the policy and

---

[2] Establishing general, as opposed to specific, personal jurisdiction, section 48.193(2) proves "more difficult" to establish because it requires far more wide-ranging contacts. Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2002); Canale v. Rubin, 20 So.3d 463, 466 (Fla.Dist.Ct.App. 2009).

[3] Section 48.193(1)(b) provides jurisdiction over any person who commits a tortious act in Florida.

demanding payment thereof or suffer a lapse in the policy.  The ongoing communications with Ms. Fuqua in Florida regarding the servicing of the life insurance policy, together with the failure to advise Ms. Fuqua of the consequences of having purchased the policy, constitute commission of a tortious act in Florida for purposes of the long-arm statute.

With respect to constitutional minimum contacts and the reasonable anticipation of being haled into court in Florida, it is clear from Ms. Fuqua's affidavit that Dingler and Prime "purposefully directed" communications to Ms. Fuqua in the servicing of the policy.  See Wendt, 822 So.2d at 1258 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2171, L.Ed.2d 528 (1985)).  The number of communications in this case is not limited to one; the communications lasted over the course of am almost five-year period.  It was reasonable for Dingler and Prime to assume that their communications would have some effect in Florida and defending this suit in Florida will not offend notions of fair play.  See Madara.  Consequently, this Court has personal jurisdiction over Dingler and Prime.

## **MISREPRESENTATION AND CHURNING**

The Court finds that count II for misrepresentation is pleaded with sufficient specificity.  The complaint alleges that Dingler and Prime should have given certain advice, which they allegedly failed to do.  The "agency" defendants have been described as the individual and entity responsible for the omissions.

The Court finds that the allegations in count III for churning are sufficient to survive this motion to dismiss.  The complaint alleges that the intent to defraud existed at

the time the policy was purchased in 1997 and certain disclosures were never made over the course of dealings between the parties. The allegations are sufficient to require an answer.

It is therefore **ORDERED AND ADJUDGED** that Defendants Alfred Dingler and Prime Insurance Agency's Motion to Dismiss (Dkt. 5) is **DENIED.** Defendants Dingler and Prime Insurance Agency shall file an answer to the Complaint within ten (10) days from the date of this order.

**DONE AND ORDERED** at Tampa, Florida, on January 5, 2010.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record